# UNITED STATES DISTRICT COURT
# JUDICIAL DISTRICT OF RHODE ISLAND

**CONSUMER PRODUCT DISTRBUTION, Inc.,**
**d/b/a J. POLEP DISTRIBUTION SERVICES**

**Plaintiff**

**vs.** **C.A. No. 05-453 S**

**BARBATO & SONS, CO.,**

**Defendant**

## THE RHODE ISLAND DIVISION OF TAXATION'S MOTION TO QUASH SUBPOENA DUCES TECUM FOR THE KEEPER OF THE RECORDS

Now comes the Tax Administrator of the State of Rhode Island, David M. Sullivan, and respectfully moves the Honorable District Court to quash the subpoena duces tecum delivered to the administrative office of the Division of Taxation on October 27, 2006, in connection with the above captioned matter. A copy of the subpoena is attached hereto. ( **EXHIBIT A**).

The Tax Administrator's Motion is based upon the following four (4) grounds: (1) Tax Division employees are prohibited by express statutory provisions from giving testimony, or providing tax documents demanded by the subpoena; (2) Enforcement of the subpoena arbitrarily discriminates against state tax administration; (3) The request is so overly broad, vague and unreasonable, that compliance with it is virtually impossible; and, (4) The Rhode Island Division of Taxation is not responsible for compiling and maintaining most of the records requested.

It is the Tax Administrator's position that a litigant seeking the tax returns or return information of another party, must pursue Court ordered discovery under the Rules, with proper notice to the taxpayer(s), whether corporate or individual, whose returns are being sought, and provide for the taxpayer(s) an opportunity to be heard on the propriety and need to compel production of this private information.

In support of this Motion, the Court is respectfully referred to the supporting Memorandum of Law, which is filed herewith.

David M. Sullivan, Tax Administrator
By his Attorney,

Dated: 11/10/06 [signature]

Gerald F. McAvoy, Esq. (#2639)
R.I. DIVISION OF TAXATION
One Capitol Hill, Providence, R.I. 02908-5800
Telephone: (401)-222-6271
Telecopier: (401)-222-8244

**CERTIFICATION**

I hereby certify that I caused a true copy of the within Motion to Quash Subpoena Duces Tecum to be mailed, first class, postage prepaid, to Christopher Lambert, Esq., of Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence, R. I., 02903, on this 10th day of November, 2006.

Judith A. D'Agnenica

# *EXHIBIT A*

# United States District Court

RECEIVED
OCT 27 2006
R.I. DIVISION OF TAXATION
TAX ADMINISTRATOR

DISTRICT OF Rhode Island

CONSUMER PRODUCT DISTRIBUTION, INC.
d/b/a J. POLEP DISTRIBUTION SERVICES

V.

BARBATO & SONS, CO.

A true copy attest Michael DeFalco 10/27/06

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 05- 453 S

TO: Keeper of Records
Rhode Island Division of Taxation
One Capitol Hill
Providence RI 02908

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Rodio & Ursillo, Ltd.<br>86 Weybosset Street, Providence RI 02903 | November 9, 2006<br>11:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for Plaintiff | 10/23/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Christopher Lambert, #4396 (401) 331-6400
Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence RI 02903

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

# SCHEDULE A

**TO: Keeper of Records**
**Rhode Island Division of Taxation**
**One Capitol Hill**
**Providence RI 02908**

Pursuant to Federal Rules of Procedure 34 and 45, you are commanded to produce for inspection and copying the documents requested below at 11:00 a.m. on November 9, 2006, at the offices of Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence RI 02903.

Definitions and Instructions

In responding to these document requests, produce all responsive documents that are within the scope of Federal Rules of Civil Procedure 26(b), 34 and 45 which are in your possession, custody or control, including documents in the possession of your attorneys, their investigators, and all other persons acting in your behalf. All documents produced shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in this request.

If any documents are withheld from production on a claim of privilege, or on any other grounds, the claim shall be made expressly and shall be supported by a description of the nature of the documents withheld that is sufficient to enable the party issuing this subpoena to contest the claim.

The following definitions and rules of construction shall apply to these requests for production of documents:

(a) The terms "documents" and "documentation" are defined to by synonymous in meaning and equal in scope to the usage of the term "documents" in Federal Rules of Civil Procedure 34(a) and 45, including, without limitation, e-mails and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(b) The term "concerning" means, in the broadest sense, including, relating to, referring to, discussing, describing, evidencing or constituting in any way.

(c) The term "communication" means the transmittal of information in the form of facts, opinions, ideas, inquiries, or otherwise. Both oral communications and communications by document are within the meaning of this term unless it is otherwise modified.

**UNITED STATES DISTRICT COURT**
**JUDICIAL DISTRICT OF RHODE ISLAND**

**CONSUMER PRODUCT DISTRBUTION, Inc.,**
**d/b/a J. POLEP DISTRIBUTION SERVICES**

**Plaintiff**

**vs.** **C.A. No. 05-453 S**

**BARBATO & SONS, CO.,**

**Defendant**

**THE RHODE ISLAND DIVISION OF TAXATION'S MOTION TO QUASH SUBPOENA DUCES TECUM FOR THE KEEPER OF THE RECORDS**

Now comes the Tax Administrator of the State of Rhode Island, David M. Sullivan, and respectfully moves the Honorable District Court to quash the subpoena duces tecum delivered to the administrative office of the Division of Taxation on October 27, 2006, in connection with the above captioned matter. A copy of the subpoena is attached hereto. ( **EXHIBIT A**).

The Tax Administrator's Motion is based upon the following four (4) grounds: (1) Tax Division employees are prohibited by express statutory provisions from giving testimony, or providing tax documents demanded by the subpoena; (2) Enforcement of the subpoena arbitrarily discriminates against state tax administration; (3) The request is so overly broad, vague and unreasonable, that compliance with it is virtually impossible; and, (4) The Rhode Island Division of Taxation is not responsible for compiling and maintaining most of the records requested.

It is the Tax Administrator's position that a litigant seeking the tax returns or return information of another party, must pursue Court ordered discovery under the Rules, with proper notice to the taxpayer(s), whether corporate or individual, whose returns are being sought, and provide for the taxpayer(s) an opportunity to be heard on the propriety and need to compel production of this private information.

In support of this Motion, the Court is respectfully referred to the supporting Memorandum of Law, which is filed herewith.

David M. Sullivan, Tax Administrator

By his Attorney,

Dated: 11/10/06

Gerald F. McAvoy, Esq. (#2639)
R.I. DIVISION OF TAXATION
One Capitol Hill, Providence, R.I. 02908-5800
Telephone: (401)-222-6271
Telecopier: (401)-222-8244

**CERTIFICATION**

I hereby certify that I caused a true copy of the within Motion to Quash Subpoena Duces Tecum to be mailed, first class, postage prepaid, to Christopher Lambert, Esq., of Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence, R. I., 02903, on this 10th day of November, 2006.

Judith A. D'Agnenica

# *EXHIBIT A*

# United States District Court

RECEIVED
OCT 2 7 2006
R.I. DIVISION OF TAXATION
TAX ADMINISTRATOR

DISTRICT OF Rhode Island

CONSUMER PRODUCT DISTRIBUTION, INC.
d/b/a J. POLEP DISTRIBUTION SERVICES

V.

BARBATO & SONS, CO.

A True copy attest Michael DeFalco 10/27/06

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 05- 453 S

TO: Keeper of Records
Rhode Island Division of Taxation
One Capitol Hill
Providence RI 02908

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A

| PLACE | DATE AND TIME |
| --- | --- |
| Rodio & Ursillo. Ltd.<br>86 Weybosset Street. Providence RI 02903 | November 9. 2006<br>11:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| [signature] Attorney for Plaintiff | 10/23/06 |

ISSUING OFFICER'S NAME ADDRESS AND PHONE NUMBER

Christopher Lambert. #4396 (401) 331-6400
Rodio & Ursillo. Ltd., 86 Weybosset Street. Providence RI 02903

(See Rule 45. Federal Rules of Civil Procedure, Parts C & D on Reverse)

# SCHEDULE A

**TO: Keeper of Records**
**Rhode Island Division of Taxation**
**One Capitol Hill**
**Providence RI 02908**

Pursuant to Federal Rules of Procedure 34 and 45, you are commanded to produce for inspection and copying the documents requested below at 11:00 a.m. on November 9, 2006, at the offices of Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence RI 02903.

Definitions and Instructions

In responding to these document requests, produce all responsive documents that are within the scope of Federal Rules of Civil Procedure 26(b), 34 and 45 which are in your possession, custody or control, including documents in the possession of your attorneys, their investigators, and all other persons acting in your behalf. All documents produced shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in this request.

If any documents are withheld from production on a claim of privilege, or on any other grounds, the claim shall be made expressly and shall be supported by a description of the nature of the documents withheld that is sufficient to enable the party issuing this subpoena to contest the claim.

The following definitions and rules of construction shall apply to these requests for production of documents:

(a) The terms "documents" and "documentation" are defined to by synonymous in meaning and equal in scope to the usage of the term "documents" in Federal Rules of Civil Procedure 34(a) and 45, including, without limitation, e-mails and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(b) The term "concerning" means, in the broadest sense, including, relating to, referring to, discussing, describing, evidencing or constituting in any way.

(c) The term "communication" means the transmittal of information in the form of facts, opinions, ideas, inquiries, or otherwise. Both oral communications and communications by document are within the meaning of this term unless it is otherwise modified.

(d) The term "Judgment Debtor" refers to Barbato & Sons Candy Company and "Judgment Creditor" refers to Consumer Product Distribution, Inc. d/b/a J. Polep Distribution Services. Where applicable, "Judgment Debtor" also refers to Barbato & Sons Candy Company's current and former officers, directors, agents, employees, shareholders, partners, members, trustees, predecessors, successors, corporate parents, subsidiaries, and affiliates.

(e) The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

(f) The terms "any" and "all" shall each be construed to mean any or all as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

(g) The use of the singular form of any word includes the plural and vice versa.

(h) Unless otherwise stated in the requests for production, the relevant time period for each document request is January 1, 2001 to the present.

**REQUESTS FOR PRODUCTION**

1. All documents concerning assets of any kind in which the Judgment Debtor has any rights or interest of any kind.

2. All documents concerning any interest of the Judgment Debtor in any real property.

3. All documents concerning any lease agreements of real property between the Judgment Debtor and any other party.

4. All documents concerning any equipment, including but not limited to trucks, cars and office equipment, owned, leased or used by the Judgment Debtor.

5. All documents concerning bank accounts opened, held or utilized by the Judgment Debtor.

6. All documents concerning bank accounts opened, held or utilized by the Judgment Debtor.

7. All checkbooks used by the Judgment Debtor.

8. All ledgers produced or used by the Judgment Debtor.

9. All balance sheets produced or used by the Judgment Debtor.

10. All annual, quarterly and monthly financial statements concerning the Judgment Debtor.

11. All tax returns, both federal and state, drafted or filed by or on behalf of the Judgment Debtor.

12. All documents concerning any filings required of the Judgment debtor by the Securities and Exchange Commission.

13. All documents concerning any invoices produced by the judgment debtor, including but not limited to any invoices for services rendered or goods sold by the Judgment Debtor to any other party.

14. All documents concerning any promissory notes payable to the Judgment Debtor.

15. All documents concerning payment of invoices or other debts owed to the Judgment Debtor, including but not limited to any receipts produced or issued by the Judgment Debtor.

16. All documents concerning payroll records of the Judgment Debtor, including but not limited to documents concerning amounts paid to employees of the judgment debtor and contributions made by employees on their behalf to any employee benefit plan.

17. All documents concerning payroll registers and/or paychecks issued to employees by the Judgment Debtor.

18. All documents concerning all payroll taxes paid by the Judgment Debtor.

19. All documents concerning agreements between the Judgment Debtor and any other party for whom the Judgment debtor performed services, including but not limited to any contracts with any clients or customers.

20. All documents concerning agreements between the Judgment Debtor and any vendors to the Judgment Debtor.

21. All documents concerning the identity of the officers, directors, board members and shareholders of the Judgment Debtor.

22. All documents concerning any dividends or other payments made to any shareholders of the Judgment Debtor.

23. All documents concerning any transfers to, forgiveness of the debts of, or other transaction between, the Judgment Debtor and any officers, directors, board members, or shareholders of the Judgment Debtor.

24. All documents concerning any other corporations or business entities for which any of the Judgment Debtor's offices, directors, board members or shareholders serve as officers, directors, board members, employees or consultants.

25. All documents concerning any ownership relationship, including but not limited to, any affiliate, parent or subsidiary relationship, between the Judgment Debtor and any other person, corporation, partnership or other entity.

26. All documents concerning any relationship or transaction between the Judgment Debtor and any of the following entities: Ocean Tobacco, Inc.

27. All documents concerning any communications between the Judgment debtor and any of the following entities: Ocean Tobacco, Inc.

28. All documents concerning the general ledgers of any of the following entities: Ocean Tobacco, Inc.

29. All documents concerning any audits of the Judgment Debtor, whether performed by the Judgment Debtor's personnel, external accountants, or any other party.

30. All documents concerning any meetings of the board of directors of the Judgment Debtor, including but not limited to all minutes, transcripts, records of any votes, committee reports or resolutions.

31. All documents concerning any lease agreements entered into by the Judgment Debtor or any of it parents, subsidiaries or affiliates, including but not limited to any lease agreements with Ocean Tobacco, Inc.

32. All documents concerning judgments, debts or other obligations of the judgment debtor, including but not limited to any obligations which resulted in litigation or arbitration.

33. All documents concerning any payment or settlement of any judgments, debts or other obligations of the Judgment Debtor.

34. All documents concerning any forgiveness of any judgments, debts or other obligations of the Judgment Debtor.

**UNITED STATES DISTRICT COURT**
**JUDICIAL DISTRICT OF RHODE ISLAND**

**CONSUMER PRODUCT DISTRBUTION, Inc.,**
**d/b/a J. POLEP DISTRIBUTION SERVICES**

**Plaintiff**

**vs.** **C.A. No. 05-453 S**

**BARBATO & SONS, CO.,**

**Defendant**

**MEMORANDUM OF LAW IN SUPPORT OF TAX ADMINISTRATOR'S MOTION TO QUASH SUBPOENA DUCES TECUM**

On October 27, 2006, a subpoena *duces tecum* was delivered to the administrative office of the Rhode Island Division of Taxation (Tax Division). The subpoena directs the Keeper of the Records, Taxation Division, to appear at 11:00 o'clock a.m. on November 9, 2006 at the law offices of Rodio & Ursillo, Ltd. 86 Weybosset Street, Providence, to testify in connection with the instant proceeding, and to bring and present the following documents detailed in thirty four (34) paragraphs:

> *"All documents concerning ...assets of any kind, ... interests in any real property, ... lease agreements, ... equipment including trucks, cars and office equipment, owned leased or used, ...bank accounts, opened, held or utilized,... checkbooks used,...ledger produced or used,...balance sheets produced or used,... annual, quarterly, and monthly financial statements, ...tax returns, both state and federal, drafted, or filed, ... documents concerning filings ...by the Securities and Exchange Commission,...invoices produced ... including... invoices for services rendered or goods sold, ... promissory notes payable,... payment of invoices or other debts owed...including...receipts produced or issued, ...payroll records...including amounts paid to employees and contributions made by employees of ...behalf of any employee benefit plan, ...payroll registers and or paychecks, ...payroll taxes paid, ... agreements with ...other parties for whom ...services were provided, ...including ...contracts with any clients or customers, ... agreements* (with) *any vendors, ...identity of officers, directors, board*

> *members, and shareholders, ... dividends or other payments made to shareholders, ...transfers to, forgiveness of debts, of, other transactions* (with) *any officers, directors, board members or shareholders, ...other corporations or business entities for which ...officers, directors, board members or shareholders serve as officers, directors, board members, employees or consultants, ... ownership relationship, including... affiliate, parent, or subsidiary relationship* (with) *any other person, corporation, partnership or other entity, ...relationship or transaction* (with) *Ocean Tobacco, Inc.,... communications* (with) *Ocean Tobacco, Inc., ... general ledgers of Ocean Tobacco, Inc., ...any audits performed whether by* ...(Defendant) *personnel, external accountants, or any other party, ... meetings of boards of directors ... including ... all minutes, transcripts, records of any votes, committee reports, or resolutions, ... any lease agreements entered into...by any of its parents, subsidiaries, or affiliates including...any lease agreements with Ocean Tobacco, Inc.,...judgments, debts, or other obligations which resulted in litigation or arbitration,...any payment of settlement of any judgments, debts or other obligations, ...concerning any forgiveness of any judgments, debts, or other obligations,... of the Judgment Debtor* (Barbato & Sons, Ltd.)

In the United States District Courts, these "third party" discovery mechanisms are reviewable prior to enforcement, and should only be directed at a disinterested third party, after thorough review, as the third party generally lacks a sufficient stake in the proceeding to risk contempt by refusing compliance. Church of Scientology of Cal. v. United States, 506 U.S. 9, 18 n. 11, (1992). In reviewing a discovery order directed at a third party, the review is for "abuse of discretion", in allowing such discovery. In re Sealed Case, 121 F.3d 729, 740, (D.C. Ct. 1997). In the instant case, the granting of such a broad based subpoena of records would be a classic abuse of discovery involving private litigants, for the reasoning and precedent cited below.

**THE SUBPOENA REQUIRES THE BREACH OF THE CONFIDENTIALITY OF FEDERAL TAX RETURNS AND FEDERAL INFORMATION**

The United States mandates the confidentiality of information obtained during the course an IRS audit or investigation, for the identical purposes, in much of the same manner as

that carried out by the State of Rhode Island, with the onus of unauthorized disclosure being borne by the Federal officers and employees:

> **26 USC § 6103 Confidentiality and disclosure of returns and return information.** (a) General rule: Returns and return information shall be confidential, and except as authorized by this title -
>
> (1) no officer or employee of the United States,
>
> (2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section, and
>
> (3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (6), (12), (16), (19), or (20) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n), shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee. (Emphasis added).

Section 6103 of the Internal Revenue Code goes on to authorize disclosure of federal tax return and tax return information to state tax officials but places several restrictions to prevent further dissemination of this information:

> (d) Disclosure to State tax officials and State and local law enforcement agencies.
> (1) In general. Returns and return information...shall be open to inspection by, or disclosure to, any State agency, body, or commission...which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws. Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission. (Emphasis added).

In the records subpoenaed by the Plaintiff, there is a file under seal, submitted by Federal officers of the Internal Revenue Service, as part of an investigation of the Defendant.

Without waiver by the United States, or the Defendant through the United States, there is absolutely no possibility of tendering the documents contained in that file, to any litigating party, on an *ex parte* discovery request, without violating the provisions of Section 6103. The District Court however, must make the final determination if disclosure is warranted and rely upon federal case precedent from criminal context to find an appropriate analytical parallel.

In the more stringent context of criminal grand jury subpoenas, the federal courts apply a "balancing of interests" test for a discovery request that breaches confidentiality and weighs the following criteria:

(1) the disclosure sought (balanced against) the potential injury caused by such disclosure;

(2) the recognition of such a claim of "privilege" by the (state) courts;

(3) whether the "federal interest" in such disclosure is a weak or a strong one;

(4) whether the state's interest is "intrinsically meritorious" in the Court's independent judgment. *American Civil Liberties Union of Mississippi vs. Finch*, 638 F.2d. 1336, (5th Ct. 1981) cited in *In Re: Joyce Hampers*, 651 F.2d 19, 8 Fed. R. Evid. Serv. 733, (1st Ct. 1981).

In this civil action between two private parties, the Plaintiff is seeking a breach of confidentiality that is the statutory *quid pro quo* given in exchange for voluntary taxpayer compliance and cooperation with federal tax laws. The benefit derived from such disclosed information, in this less compelling civil context, is far outweighed by the adverse consequence of discouraging taxpayers from voluntarily providing personal or proprietary information whose statutory confidentiality can be easily circumscribed by an *ex parte* subpoena. At the very minimum, the Court should require a showing of

"need" and "materiality" at some type of adversarial proceeding, thereby triggering notice to, and opportunity for, a hearing provided to the party whose tax affairs are to be accessed and publicized. An *ex parte* application to a clerk of courts, or a single justice, through the issuance of a *subpoena duces tecum* should not suffice.

The Court should consider the extent of the "federal interest" in such a precedent established by allowing disclosure of statutorily protected tax information. This appears to be a contract/collection dispute between two incorporated business entities. There should be enough discoverable data available between the parties, within the parameters of the Rules, to obviate the need for such a draconian fishing expedition through the archives of a statutorily protected state agency. It is extremely doubtful that there a true "federal interest" in forcing the Tax Administrator to breach confidential and protected information through the Supremacy Clause in this type of a case.

In a non-tax criminal case, the disclosure of privileged information is only allowed upon the order of a judge and will be issued if the applicant has shown (i) reasonable cause to believe that a crime has been committed, (ii) reason to believe that the information is probative of a matter in issue concerning the criminal act, and (iii) that the information sought to be disclosed, <u>cannot reasonably be obtained from any other source</u>. (<u>Emphasis added</u>.) <u>*In Re: Joyce Hampers*</u>, 651 F.2d at 22.

In the instant civil case, the length and scope of the subpoena leads to the inevitable conclusion that no other sources have been approached. The Plaintiff should make a showing regarding discovery steps it has taken pursuant to the Federal Rules regarding propriety of requesting such a global response from a non-party state agency, when the

internal business and operational records could be more easily obtained from the Defendant. While the federal courts recognize the importance and gravity of the expectation of privacy and assurance of confidentiality among litigants entrusting their information to third party custodians, there is no absolute prohibition against obtaining records for purposes of criminal investigation, and "collection of revenues" by legitimate state agents. *Couch v. United States*, 409 U.S. 322, (1973). That being said, when state agents are not prosecuting the collection of revenues, but hold privileged information required under law to facilitate such collection, they should not be placed at the mercy of private litigants, whose interests are distinct and divergent from the purposes and ethos underlying such confidential possession, and state agents' interests need be protected. *United States v. AT&T*, 642 F.2d 1285, 1292 (D.C. Cir. 1980); *Gravel v. United States*, 408 U.S. 606, 608 n.1 (1972); cf. *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979).

**THE SUBPOENA REQUIRES THE BREACH OF THE CONFIDENTIALITY OF STATE TAX RETURNS AND STATE INFORMATION**

Rhode Island statutes also plainly and unambiguously mandate that state tax returns and tax return information must be kept confidential. Moreover, the onus of asserting and maintaining the confidentiality of tax data is imposed upon the State officers and employees, as they, not the person who requests the privileged information, are the ones who are subject to criminal prosecution and/or civil sanctions for any unlawful dissemination of tax information.

With regards to the Rhode Island Sales and Use Tax, it is plainly and unambiguously prohibited for the Tax Administrator or any employee of the Tax Division to disclose any Sales or Use Tax information. The pertinent statutory provision, R.I.G.L. § 44-19-30, provides as follows:

> **Information confidential - Types of disclosure authorized.** (a) It is unlawful, except in proceedings before a court of competent jurisdiction or to collect the taxes or enforce the penalties provided by chapters 18 and 19 of this title, for the tax administrator or any person having an administrative duty under those chapters to make known in any manner whatever the business affairs, operations, or information obtained by an investigation of records and equipment of any retailer or any other person visited or examined in the discharge of official duty, or the amount or source of income, profits, losses, expenditures, or any particular, stated or disclosed in any return, or to permit any return or copy or any book containing any abstract or particulars to be seen or examined by any person. The tax administrator may authorize examination of his or her records and the returns filed with the administrator by the tax authorities of another state or of the federal government if a reciprocal arrangement exists. (Emphasis added)

Additionally, the Rhode Island Business Corporation Tax law prohibits the Tax Administrator or any employee of the Tax Division from the disclosure of corporate tax information. The pertinent statutory provision, R.I.G.L. § 44-11-21, provides as follows:

> **Information confidential - Types of disclosure authorized- Penalties for unauthorized disclosure.** (a) It is unlawful for any state official or employee to divulge or to make known to any person in any manner not provided by law the amount or source of income, profits, losses, expenditures, or any particular set forth or disclosed in any return, or to permit any return or copy or any book containing any abstract or particulars to be seen or examined by any person except as provided by law. It is unlawful for any person to print or publish in any manner not provided by law any return or any part or source of income, profits, losses, or expenditures appearing in any return.
>
> (b) Any offense against this provision is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both, at the discretion of the court. If the offender is an officer or employee of the state of Rhode Island, he or she may be dismissed from office or discharged from employment; provided, that the tax administrator may authorize examination of the return by the tax officials regularly in the employ of another state or of the federal government if a reciprocal arrangement exists. (Emphasis added)

Finally, the State's Personal Income Tax Code is in accord with both the above statutes and the Internal Revenue Code in that R.I.G.L. §44-30-95 states, in pertinent part, that:

> **(c) Secrecy requirement.** It shall be unlawful for any state official or employee to divulge or to make known to any person in any manner whatever not provided by law the amount or source of income, profits, losses, expenditures, or any particular of them set forth or disclosed in any return, or to permit any return or copy of the return or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law.....Any offense against the foregoing provision shall be punished by a fine not exceeding one thousand dollars ($ 1,000), or by imprisonment not exceeding one year, or both, at the discretion of the court. If the offender is an officer or employee of the state of Rhode Island, the offender may be dismissed from office or discharged from employment. (Emphasis added).

There is no exception in any of these confidentiality statutes for the disclosure of tax information sought by subpoena *duces tecum*.

The Rhode Island General Assembly reinforced the confidential nature of state tax returns in the "Access to Public Records Act."(APRA). Chapter 38 of Title 2 of the General Laws authorizes liberal public access to governmental records. Significantly however, "all tax returns" are excepted from the definition of records open to public inspection. R.I.G.L. § 38-2-2 (4) (O). Likewise, "all investigatory records of public bodies", R.I.G.L. § 38-2-2 (4) (P), and "preliminary drafts, notes, impressions, memoranda, working papers and work products." R.I.G.L. § 38-2-2 (4) (K), are excluded from the ambit of public records under APRA. Thus, Sales & Use Tax audit files and documents, communications or drafts generated or received during the formation of an agency letter ruling or a declaratory ruling are not deemed public records under Rhode Island law. The Tax Administrator asserts that, underlying these exceptions, are significant state interests and individual rights to privacy.

The General Assembly also recognized the confidential nature of tax returns when enacting statutes relating to civil procedure in judicial forums. R.I.G.L. § 8-6-2. This statute authorizes the Supreme, Superior, Family and District courts to make rules regulating practice and procedure. One limitation to this rule making power however, restricts the Rhode Island courts in the precise area at issue here:

> **Rules of practice and procedure.** (a) The supreme court, the superior court, the family court, and the district court, by a majority of their members, shall have the power to make rules for regulating practice, procedure, and business therein. The chief judge of the district court shall have the power to make rules for regulating practice, procedure and business in the traffic tribunal. The rules of the superior, family, district court and the traffic tribunal shall be subject to the approval of the supreme court. Such rules, when effective, shall supersede any statutory regulation in conflict therewith.
>
> (b) In prescribing such rules, the court shall have regard to the simplification of the system of pleading, practice, and procedure in the courts in which the rules shall apply in order to promote the speedy determination of litigation on the merits; provided, however, that each respective court shall not in the rules of procedure require a party to a civil action to produce either by discovery, motion, to produce or interrogatory an income tax return, W-2 statement, or copies thereof. The rules presently in effect in the courts of the judicial system shall remain and continue in force and effect until revised, amended, repealed, or superseded by rules adopted in accordance with this section. (Emphasis added).

While not controlling upon the United States Courts, the above statutes are highly probative of a consistent legislative intent regarding the privacy of tax information. Here, the subpoena was not directed to a party before the District Court or to a person with any legal interest or financial stake in the action, but to the Tax Division; a disinterested third party with not even a tangential relationship to the case or to the Defendant.

The Rhode Island Supreme Court and General Assembly have consistently held that the confidentiality of tax information is paramount over the ordinary "discovery process. §§ 8-6-2(b); 38-2-2 (4); 44-19-21; 44-19-30; 44-30-95(c). *DeBiasio vs. Gervais Electronics*

Corp., 459 A.2d. 941, (RI 1983). The statutory assurance of confidentiality is worthwhile and critically important to voluntary state tax compliance. Weighing therefore the potential harm of disclosure against the dubious benefit of information sought, the absence of any true federal interest in this disclosure, the availability of alternative discovery routes, and the consistent recognition of confidentiality under state jurisprudence, it is clear that, under even the most liberal reading of the *Finch* criteria, (supra), the need for the requested information through the Tax Administrator does not rise to the level of Court ordered compliance.

**THE SUBPOENA IS OVERLY BROAD, GENERAL, AND BURDENSOME**

It is noted that the subpoena fails to indicate or specify or identify any taxpayer identification numbers such as the Sales Tax Permit number, or the Federal Employee Identification Number (FEIN) of the business. Tax Division records are not indexed or referenced by tax issue but by taxpayer name and identification number so as to avoid confusion among similarly named taxpayers. Thus, identifying some the information that the Plaintiff seeks would entail time consuming record by record examination of any audit files for similarly named taxpayers.

The subpoena also fails to indicate a discrete time period for which the records are sought. Does the Plaintiff wish to see Tax Division records from the inception of the business? There is no individual in the Tax Division who can address such an open ended and limitless request. Furthermore, since all but current tax records and tax returns are stored off-site, subpoena compliance would cost the State an enormous expenditure. The private off site record storage contractor (Capital Records Management) currently

charges the Tax Division $1.50 per record search and retrieval regardless of whether if the search was successful or not. Without more specific information, there is no way to locate the requested tax information or ascertain the accuracy of any records located or to avoid unnecessary expense.

Finally, even if the subpoena had been more detailed in scope and time, the request is unreasonable and unduly burdensome as it afforded the Tax Division little more than four weeks between the service date, (October 27, 2006), and the rescheduled appearance date, (November 28, 2006), in which to locate, identify, and compile, an unknown volume of records in order to comply. It is reiterated that state tax records that are not current, are stored off-site by a private contractor, Capital Records Management, and retrieval of documents archived at that location may take in excess of one week, while identification of unlimited years worth of such records would undoubtedly take longer.

**<u>THE TAX DIVISION DOES NOT HOLD MOST OF THE RECORDS</u>**

Many of the subpoenaed records would not under the most generous interpretation, be documents which are maintained by the Tax Division. Moreover, all Tax Division records are destroyed pursuant to a record retention schedule. Upon information and belief, the longest any Tax Division administrative records are retained is seven (7) years, and some are only retained for three (3) years; depending upon the category of the record. The subpoena demands records for an indeterminate time period. These records would be archived by year, and not indexed by topic or Tax Division title. In order to distinguish between requested records that currently exist from discarded earlier records

would require effort and dedication of public staff on behalf of a private litigant which is not within the purview of the Tax Division's statutory duties.

## ENFORCEMENT OF THE SUBPOENA ARBITRARILY DISCRIMINATES AGAINST AND UNDULY BURDENS THE STATE TAX ADMINISTRATION

The object and purpose of confidentiality provisions in the state tax codes is to encourage taxpayers to voluntarily comply with the law, and make candid declarations on their returns or during audits by insuring that their personal and business affairs will not be subject to publication. Tax returns and taxpayer information in the custody and control of the Tax Administrator would be open to countless subpoenas for every imaginable purpose if disclosure per subpoena is required.

Moreover, wholesale access by subpoena, in addition to nullifying the unequivocal and consistent legislative policies underlying the confidentiality/nondisclosure provisions, will inappropriately place the burden of deterring or contesting abusive discovery inquiries upon the Tax Administrator and ultimately the taxpayers of Rhode Island. The Tax Administrator is not in a position to assess or raise the issues of need, relevance, and materiality of the requested tax information with regard to the issues before this Court. If forced to provide such information, at the discretion or whim of litigating parties, the Division of Taxation and its employees will suffer a form of "indentured servitude" to the litigants and provide "expertise on demand", at the expense of the public for the changing agendas of private parties. For decades, compelling non-parties to serve as investigators and expert witnesses, through the use of subpoenas, has been held by the Rhode Island Supreme Court to be an unconscionable and unenforceable demand. *Owens vs. Silvia,*

*M.D., et al.* 838 A.2d. 881, (RI 2003), *Sousa vs Chaset,*, 519 A.2d. 1132, at 1135, (RI 1987), *Ondis vs. Pion*, 497 A.2d. 13, at 18, (RI 1985), and *L'Etoile vs. Director of Public Works*, 89 R. I. 384, (1959). This last consideration is particularly egregious in the instant case where private litigants are seeking to divert state employees from their assigned official duties and make them their own investigators in litigation with private businesses, where the breadth and scope of the subpoena is beyond the ordinary schedule of documents maintained.

Additionally, if disclosure of the requested records was improper, it is not the subpoenaing party who is subject to civil or criminal sanctions, but the Tax Division employees. Thus, public employees who are paid from and by public funds must divert time, attention, and effort from official duties and be placed in jeopardy for sanctions, by becoming embroiled in disputes between private parties. The State's interest in insuring the confidentiality of tax information and in maintaining the orderly administration of state revenue, as well as the individual and corporate privacy interests, militate against unreasoned disclosure of tax information.

## CONCLUSION

For the referenced reasons and legal precedent, the Tax Administrator respectfully requests that the subpoena *duces tecum* be quashed.

Respectfully submitted,

David M. Sullivan, Tax Administrator,

By his attorney,

Dated: 11/10/06

Gerald F. McAvoy, Esq. (#2639)
R.I. DIVISION OF TAXATION
One Capitol Hill,
Providence, R.I. 02908-5800
Telephone: (401)-222-6271
Telecopier: (401)-222-8244

**CERTIFICATION**

I hereby certify that I caused a true copy of the within Memorandum of Law to be mailed, first class, postage prepaid, to Christopher Lambert, Esq., of Rodio & Ursillo, Ltd., 86 Weybosset Street, Providence, R. I., 02903, on this 10th day of November, 2006.

Judith A. D'Agnenica